Rekas *v.* Dopkavich, Appellant.

Argued April 13, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Herman B. Shepard,* for appellant.

*John M. Dudrick,* for appellee.

OPINION BY MR. JUSTICE JONES, May 23, 1949:

This is an appeal from a decree awarding specific performance of an agreement for the *inter partes* transfer of a liquor license in certain specified contingencies. Inasmuch as effective transfer of the license necessarily depends upon ultimate approval by the Pennsylvania Liquor Control Board,[1] the decree naturally goes no

---

[1] In relevant connection, the statutorily authorized Regulations of the Pennsylvania Liquor Control Board provide as follows:

"Sec. 238. Person to Person Transfers.

When an application has been filed for transfer of a license from one person to another at the same address, a bill of sale of the business or fixtures shall be executed by the licensee. The purchase price of the business shall be placed in escrow with an attorney or financial institution to be paid to the original licensee upon the approval of the transfer by the Board. The actual transfer of the ownership of the business shall not be construed as passed until approval of the transfer of license has been given. The transferee shall exhibit to the Board, or its representative, a deed or a lease for the premises, or bill of sale, or both, as the case may be. Inasmuch as the ownership of the business shall not change hands until the license transfer has been approved by the Board, the original licensee may continue the operation of the business and may sell liquor and/or malt or brewed beverages until formal approval of the transfer

further than to require of the defendant his execution and delivery to the plaintiff of all papers and the doing of all things necessary to effect a transfer of the license from him to the plaintiff.

The appellant does not question the merit of the learned chancellor's findings of fact which the court en banc approved. He complains, rather, of the inferences and conclusions drawn by the chancellor from the established findings, reminding us with citations [2] that such inferences and conclusions are not binding upon review by this Court and that we are at liberty to correct them insofar as they are erroneous. To that statement of law, of course, no exception can be taken. But, the inferences and conclusions, whereof the appellant complains, were drawn from undisputed written instruments, whereon the respective rights of the parties depend, and it is our opinion that the construction placed upon the evidentiary writings by the court below is correct and the consequent decree proper. The facts material to an understanding of the controversy are as follows.

The plaintiff and the defendant are, respectively, mother and son and live in the same dwelling at 38 Center Street, Kingston, Pennsylvania. The mother is the owner of the property and, for many years, operated a restaurant there in connection wherewith she held a restaurant liquor license from the Pennsylvania Liquor Control Board. On October 29, 1945, by a lease in writing, the plaintiff demised the premises to her son for

---

has been given. However, if the original licensee is not on the premises and not in full charge of the business, no liquor or malt or brewed beverages shall be sold until the license transfer is approved."

[2] *Miller v. Central Trust & Savings Co.*, 285 Pa. 472, 476, 132 A. 579; *McConville v. Ingham*, 268 Pa. 507, 519, 112 A. 85; *Beale v. Kline*, 183 Pa. 149, 154, 38 A. 897; and *Stockett v. Ryan*, 176 Pa. 71, 80, 34 A. 973.

a fixed monthly money rental and certain other specified considerations. At the same time, she and her son entered into a written agreement, which they signed, sealed and caused to be witnessed, respecting a transfer to the son of the liquor license for the premises and the rights of the parties thenceforth in such connection. They also executed on the same day a bill of sale from the mother to the son for all liquor and beer on the premises. The bill of sale, which specified a consideration of $600, contained language purporting to be a transfer of the liquor license, but the habendum clause was expressly limited to the "goods and chattels and articles of personal property . . . by these presents bargained, sold . . ." etc. The bill of sale further recited that the transfer (i.e., of the business and license) was subject to approval by the Pennsylvania Liquor Control Board. The lease, by its terms, was to run from the time the transfer of the liquor license became effective until August 1, 1947. It contained no provision for any extension or renewal; and, the court below found that there was no holding over. In the agreement concerning the liquor license, the parties, after reciting that the license was a benefit to the premises and that they desired that it should not be transferred to any other premises or any other party, expressly agreed that "in the event that [the son] . . . forfeits his right to the possession of said premises by virtue of any provision in the lease . . . he will transfer to [the mother] the Pennsylvania Liquor License for the said premises without any consideration, it being agreed that receipt of said License by [the son] was also without any consideration."

In construing the above-quoted provision of the agreement, the learned chancellor interpreted the term "forfeits" as having been used by the parties in the sense of "loses". As a verb, "forfeit", in its primary use, means "to lose"; and that is also its legal meaning:

26 Corpus Juris p. 891 [§4]; 23 Am. Jur. §2, p. 599. The provision was, therefore, properly construed to mean that, in the absence of a renewal or extension of the lease or a holding over, the expiration of the specified term constituted a termination of the son's "right to the possession of said premises by virtue of [a] provision in the lease . . ." and that, accordingly, the son was obligated by the express terms of the agreement to "transfer to [his mother] the Pennsylvania Liquor License for the said premises without any consideration . . ." No other conclusion could reasonably have been deduced from the writings. Admittedly, the term of the lease was neither renewed nor extended. The appellant contents himself with a bald assertion that there was a "holding over", but the learned court below rightly rejected that contention. A "holding over" after the term of a lease is a tenure which the law implies from the intention of the parties as evidenced by their conduct. See Trickett on Landlord and Tenant, Section 493. Here, no such intention can be inferred, certainly not as to the mother. When the term of the lease expired, the mother and son were already involved in this very litigation over the premises and the license.[3] Nor was any notice to vacate necessary in the circumstances in order to avoid the creation of a new tenancy by implication of law; the lease was at an end by the expiration of its term: see *Williams v. Ladew*, 171 Pa. 369, 376, 33 A. 329; *Gilbert v. Price*, 18 Pa. Superior Ct. 359, 361.

The appellant ascribes to the word "forfeits" a strict connotation which he apparently derives from the com-

---

[3] The mother's original bill of complaint, filed April 29, 1947, had laid her right to a surrender of the premises and a retransfer of the license upon an alleged failure of one of the considerations mentioned in the lease,—a cause which she later voluntarily withdrew after amending her bill so as to base her right to the relief sought on the expiration of the lease and the relevant provision of the agreement.

mon-law idea of a forfeiture. The cases which he cites in that connection as to the law's abhorrence of a forfeiture, etc., are not pertinent here. Of course, there was no such forfeiture. Admittedly, the defendant was not in default under the lease up to the end of the term. All that actually happened (but it was quite enough) was that the lease expired according to its definitely specified term; and, because of that, it was forthwith the defendant's duty under his contractual obligation to surrender peaceable possession of the premises and transfer the license to his mother.

The defendant's principal contention is that the transfer of the license by the bill of sale was absolute and is not to be cut down, for any one of several reasons, by the provisions of the contemporaneous written agreement concerning the license and the rights of the parties in respect thereto in certain future contingencies. The bill of sale was in intended compliance with the requirements of Section 238 of the Regulations of the Pennsylvania Liquor Control Board (see footnote 1 ante) relating to the transfer of a license from one person to another at the same address. The bill of sale *so required* is intended to cover the "business and fixtures" and the purchase price is for "the business" with its goods and chattels *and not for the license.* Consequently, the consideration recited in the bill of sale affords the defendant no reason for refusing to retransfer the license to the owner of the premises, the lease therefor having come to an end. Nor does the agreement, in its relation to the bill of sale, violate the parol evidence rule. No single writing embodied, nor was intended to embody, the whole of the parties' understanding. Consequently, the case of *Gianni v. Russell & Co., Inc.,* 281 Pa. 320, 324, 126 A. 791, cited by the appellant, is not in point. The three contemporaneous written instruments, to wit, the lease, the agreement and the bill of sale, were all executed on the same day as integral

and essential parts of one and the same transaction and are therefore to be construed together: see *Parker & Wallace v. The Oil Well Supply Company,* 186 Pa. 294, 298, 40 A. 518; *Howell v. Wheelock,* 115 Pa. Superior Ct. 599, 603, 176 A. 252. The instant case is really stronger for the plaintiff than either of the two last cited. Here, parol evidence was unnecessary to show the interrelation and dependence of the three writings. See also *Wilson v. Viking Corporation,* 134 Pa. Superior Ct. 153, 158-159, 3 A. 2d 180. So considered, the agreement leaves no doubt that the transfer of the license from the mother to her son was without consideration in the bill of sale; that it was likewise to be retransferred to her upon the accrual of her right to repossession of the demised premises; and that the son could not rightfully transfer the license to anyone but the mother. That such was the intendment and understanding of the parties is clear beyond any question. The agreement itself contained the further injunction that "In no event shall transfer [of the license by the son] be made to anyone except the party of the first part [i.e., the mother]."

The appellant's remaining contention that the agreement is unenforceable, as being executory and without actual consideration, also lacks merit. The transfer of the license was, of course, without consideration and was necessarily so intended. But, the agreement to retransfer the license in certain contingencies was not without consideration. The agreement was under seal and also contained a recital by the parties, as allowed by the Uniform Written Obligations Act of May 13, 1927, P. L. 985, Sec. 1, "declaring themselves legally bound" thereby. And, beyond that, the entire transaction was founded upon an actual consideration moving to the defendant, namely, the demise of the described premises and a concomitant transfer of the liquor license therefor.

Decree affirmed at the appellant's costs.