Edward J. EGGLESTON and Sadye J. DeRoy Silverman, Executors under the Last Will and Testament of Emanuel I. DeRoy, Deceased,

v.

A. J. DUDLEY, District Director of Internal Revenue, Philadelphia Region.

Civ. A. No. 13859.

United States District Court
W. D. Pennsylvania.

March 29, 1957.

Gilbert Morcroft, Pittsburgh, Pa., for plaintiff.

D. Malcolm Anderson, U. S. Atty., Thomas Shannon, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

McILVAINE, District Judge.

The above entitled cause came on regularly for trial and the Court having duly considered the evidence and being fully advised in the premises now finds the following:

### Findings of Fact

1. This action arises under the Internal Revenue Code of the United States as amended.

2. Defendant was the District Director of Internal Revenue for the Pittsburgh District of the Philadelphia Region.

3. Emanuel I. DeRoy died a resident of Cambria County, Pennsylvania, on Oc-

tober 13, 1950, and by his last will and testament, duly probated in the Office of the Register of Wills of said county and recorded in Will Book, Volume 25, at page 307, appointed Edward J. Eggleston and Sadye J. DeRoy as executors of said will. Said executors duly qualified to act as such before said Register of Wills and thereafter the said Sadye J. DeRoy intermarried with Benjamin Silverman and is now known as Sadye J. DeRoy Silverman.

4. On or about the 23rd day of November, 1951, plaintiffs filed their federal estate tax return for said decedent's estate and paid the tax shown thereby, to wit, $28,419.80.

5. On or about September 13, 1954, T. Coleman Andrews, Commissioner of Internal Revenue Service, by A. J. Dudley, District Director of Internal Revenue, sent a letter to Edward J. Eggleston, one of the plaintiffs herein, as co-executor, proposing a deficiency tax of $15,627.26. By letter dated October 8, 1954, the District Director advised plaintiffs that the estate was allowed a credit against said deficiency in the amount of $2,187.77. The deficiency letter referred to contained the following reason for the assessment of a deficiency tax, to wit:

"Schedule M—

| Marital Deduction | Return | Company | | Determined |
|---|---|---|---|---|
| Item 2 | 1026.11 | Equitable | Exhibit | A |
| " 3 | 5017.35 | " | " | B |
| " 4 | 3031.81 | " | " | C |
| " 5 | 7020.28 | " | " | D |
| " 6 | 2013.80 | " | " | D |
| " 7 | 1019.34 | " | " | E |
| " 8 | 2000.00 | " | " | F |
| " 9 | 3000.00 | " | " | G |
| " 10 | 7179.78 | " | " | H |
| " 11 | 16540.99 | " | " | I |
| " 12 | 25623.86 | " | " | 5 |
| " 13 | 25590.20 | " | " | 4 |

It is determined that proceeds of above life insurance policies are disallowed as property qualifying for the marital deduction under § 812 (e) of the Internal Revenue Code because the spouse's interest in the policies are subject to termination."

6. Item 12 of Schedule M, as referred to in Paragraph 5 hereof, relates to New York Life Insurance Company policy number 9–676–523, and Item 13 of said schedule, as referred to in paragraph 5 hereof, relates to New York Life Insurance Company policy number 10–872–450.

7. On November 15, 1954, plaintiffs paid to defendant, under protest, the sum of $15,642.80 in satisfaction of an assessed deficiency of $13,439.49 plus interest thereon of $2,203.31.

8. On or about November 17, 1954, plaintiffs filed a Claim for Refund of the amount so paid on the assessed deficiency.

9. On March 23, 1955, the defendant notified plaintiffs by registered mail that the Claim for Refund had been rejected in its entirety.

10. This action by plaintiffs was instituted within two years after plaintiffs' receipt of notice of the rejection of their Claim for Refund.

11. Plaintiffs have restricted their claim of illegal assessment to the District Director's disallowance for marital deduction purposes of said New York Life Insurance Company policies numbers 9–676–523 and 10–872–450, asserting that both policies qualified for the

marital deduction allowance, under the provisions of the Internal Revenue Code upon decedent's death.

12. The beneficiary clauses in each of the two policies in dispute provide as follows:

"I hereby direct that upon receipt of due proof of my death, settlement of the proceeds of the above numbered Policies shall be made with the following designated beneficiaries in the following manner, hereby revoking any prior designation of beneficiary under or direction as to the manner of payment of said Policies.

"Said proceeds shall be paid in monthly instalments under Option (3)—Twenty Years Certain of the Optional Methods of Settlement, to Sadye J. DeRoy, my wife, herein called the Beneficiary, if living.

"If said Beneficiary be not living when said company receives due proof of my death, or if said Beneficiary shall die after receipt of such proof and before all of the instalments within the certain period shall have been paid, the proceeds of the commuted value of said unpaid instalments shall be paid in one sum to the Executors or Administrators of said Beneficiary, if she dies after receipt by said Company of due proof of my death, or to my Executors, Administrators or Assigns, if said beneficiary be not living when said Company receives due proof of my death.

"It is understood and agreed that said Beneficiary, if living, after receipt by said company of due proof of my death and on any anniversary of the first instalment due date, may withdraw in a single sum the commuted value of the unpaid instalments, if any, within the certain period under Option (3) and if said Beneficiary shall make such withdrawal, all obligations of the Company hereunder to that extent shall terminate.

"If the net sum payable under this settlement shall be insufficient to produce instalments of at least Ten Dollars each under Option (3), as hereinabove provided, said Company shall discharge its obligations hereunder by paying said proceeds in one sum, immediately upon receipt of due proof of my death to said Beneficiary, if living.

"I further direct as to each of said Policies that, to the extent permitted by laws applicable to the disposition of the proceeds no person entitled to any part of such proceeds or any payment arising therefrom shall, except as may be otherwise provided herein, be permitted to commute, anticipate, encumber, alienate or assign the same or any part thereof and no payment shall in any way be subject to such person's debts, contracts or engagements nor to any judicial processes to levy upon or attach the same for payment thereof.

"All rights, benefits and privileges conferred upon me by said Policies are hereby reserved, but the foregoing direction for settlement may be revoked as to either of said Policies only by a further change or designation of beneficiary under said Policy and also further change in the manner of payment of the proceeds thereof made as provided therein or mutually agreed upon."

13. By stipulation of counsel for all parties, it is agreed that in securing the beneficiary clauses in question, it was the insured's intention to qualify the proceeds of the policies for the benefit of the marital deduction, and that the provisions as written by the New York Life Insurance Company were written by that Company to meet the requirements of the Revenue Code according to the interpretation of that company's general counsel. However, the final beneficiary clauses in question are not the clauses as written by the general counsel of New York Life Insurance Company.

14. Following the death of Emanuel I. DeRoy on October 13, 1950, the pro-

ceeds of the two policies in question were paid to his widow, Sadye J. DeRoy, by the New York Life Insurance Company, on October 24, 1950.

15. By stipulation of counsel, it is agreed that the amount in dispute in this cause is the sum of $13,910.07, plus interest at 6% per annum from January 13, 1952.

16. The Settlement Agreement is not ambiguous but is clear and *unambiguous*. It provides for payment in the event of beneficiary's death either to beneficiary's estate or to the estate of the insured.

17. It is agreed by both parties that the Settlement Agreement in Policies 9–676–523 and 10–872–450 are one and the same as far as the words wherein controversy here are concerned and any statements directed to the wording in one is equally applicable to the wording in the other and that the same Settlement Agreement is incorporated in both policies.

### Discussion

In this case the plaintiffs seek the allowance of a marital deduction from the proceeds of two life insurance policies.

Proof was offered in the trial that the decedent wanted to qualify for the marital deduction. The Government disallowed this marital deduction because the agreement did not qualify under 26 U.S.C.A. § 812(e) (1) (D), as the interest passing to the surviving spouse was terminable. Plaintiffs rely on Pennsylvania Law and the cases thereunder which seem to hold that there is a presumption that a legacy is vested. Plaintiff would urge this Court to carry that principle of law into the instant case. The plaintiffs' primary contention is that there is an ambiguity in the settlement clause and the ambiguity should be interpreted so as to find a vested interest.

However, it has been held that a Court must interpret a will according to the language that a testator actually used, and not according to what the Court might guess that the decedent might have said if he had chosen the right words. Shedd's Estate v. Commis-

sioner of Internal Revenue, 9 Cir., 1956, 237 F.2d 345. Applying this principle to the instant case, we interpret the language in the settlement clause by the words that were actually used, and not according to what this Court might guess that the decedent might have said if he had chosen the right words. The words he used are clear. We cannot change them to make them ambiguous so as to make them mean what we think the decedent might have meant. It is well settled that statutory exemptions from taxes should be strictly construed against the taxpayer and are held applicable only to subject matter or beneficiaries clearly within their terms. Shedd's Estate v. Commissioner of Internal Revenue, supra.

By the clear words used there is a possibility that upon the occurrence of an event, in this case that the beneficiary be not living when the insurance company received due proof of the decedent's death, the interest that they would pay to the surviving spouse would terminate and the interest would then pass to a person other than the surviving spouse, in this case, the decedent's estate. Other persons might enjoy part of the property after the termination of the interest passing to the spouse. Her interest thus being terminable, the marital deduction would not be allowed in view of § 812(e) (1) (B) of the Internal Revenue Code.

Plaintiffs in the alternative urge that assuming that there are no ambiguities they would be entitled to the marital deduction because of the provisions of § 812(e) (1) (G). This provision deals with the circumstances involved when there is a life insurance policy and the spouse has the power of appointment. The section provides that the power must be exercisable in all events. The plaintiffs rely on § 811('f), 26 U.S.C.A. § 811 (b), which provides that the power of appointment should be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice. They urge that § 811 and § 812 should be together. However, § 811 deals with

what should be included in the gross estate of a decedent whereas § 812 deals with what qualifies for the net estate, that is it will deal with what may be deductible. Section 811(f) covers the situation when power of appointment should be included in a gross estate of the decedent, whereas § 812(e) (1) (F) and (G) deal with the situation where a power of appointment will qualify for a marital deduction. Under § 811(f) property in which the decedent has a power of appointment is included in the gross estate even though the exercise of the power would be subject to a precedent giving of notice. However, § 812 in order for property in which the surviving spouse has a power of appointment to qualify for the marital deduction it must be exercisable in all events, and no exceptions are made by Congress. We see no reason why § 812 must be read and interpreted the same as § 811. Congress has the right to make different conditions and it is not for the Court to change the law as Congress has written it.

### Conclusions of Law

1. The subject matter in controversy and the parties are within the jurisdiction of this Court.

2. The wording of the beneficiary clause of the Settlement Agreement attached to the two insurance policies involved in this litigation is clear and unambiguous.

3. The surviving spouse had only a terminable interest in the proceeds of these two life insurance policies within the meaning of § 812(e) (1) (B) of the Internal Revenue Code inasmuch as the insurance proceeds were payable to the executors of the decedent's estate if the decedent's spouse be not living when the insurance company received due proof of the death of the decedent. See In re Reilly's Estate, 3 Cir., 1957, 239 F.2d 797, 799.

4. No deduction will be allowed with respect to such an interest under Subsection (B) of § 812(e) (1) of the Internal Revenue Code. A marital deduction will not be allowed under Subsection (D) of § 812(e) (1) of the Internal Revenue Code inasmuch as the conditions set forth in the Subsection are not satisfied since the period of time within which the terminating contingency could occur was not limited to within six months after decedent's death.

■ 5. It is immaterial whether the interest passing to the surviving spouse is considered as a vested interest subject to being divested or as a contingent interest as it is terminable. While Subparagraph (D) of § 812(e) (1) provides an exception to the terminable interest rule under Subparagraph (B) of § 812 (e) (1) it has no application in the present case because the termination or failure of the interest of the surviving spouse could have occurred more than six months after the decedent's death. There must be a uniform interpretation of the tax laws of the United States, and the laws of the local jurisdiction cannot control the interpretation of a Federal Act.

■ Congress has the right and the authority to make any contingency as a requirement for subjecting a decedent's estate to a tax liability. A person who wishes to avail himself of the provisions must comply strictly with the requirements.

The Court finds in favor of the defendant, A. J. Dudley, District Director of Internal Revenue, Philadelphia Region, and against plaintiffs, Edward J. Eggleston and Sadye J. DeRoy Silverman, executors under the last will and testament of Emanuel I. DeRoy, deceased.

### Order

This cause came on for trial before the Court without a jury, and the Court having found for the defendant, it is hereby

Ordered and directed that plaintiffs take nothing, and that this action be dismissed on the merits and that defendant recover from plaintiffs his costs in this action.